IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

In'tl Brotherhood of Electrical                              Case No. 3:02CV7021
    Workers, AFL-CIO, Local No. 1654,

        Plaintiff

v.                                                           ORDER

L.G. Philips Display Components Co.,

        Defendant.

This is a suit under the § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The plaintiff, Local 1654 of the International Brotherhood of Electrical Workers ["union"], claims that the defendant, L.G. Philips Display Components ["Philips"], breached a provision of a collective bargaining agreement with the union relating to lump sum payment of retirement benefits following the closing of Philips's television picture tube factory in Ottawa, Ohio.

Pending is the defendant's motion for summary judgment. For the reasons that follow, the motion shall be granted.

**Background**

Philips manufactured picture tubes at the Ottawa plant until December, 2002. The union represented most of the defendant's 1400 employees. In 2000, Philips notified the union that the plant would be closing and production moved to Mexico. Following that announcement, the parties negotiated the agreement in dispute in this case.

One of the issues involved payment of a lump sum to employees under the age of fifty-five whose right to a pension had vested because they had worked for more than five years for Philips.

Under the provisions of the Retirement Plan, employees were entitled to a pension at age sixty-five, or, if they had sufficient years of service, at age fifty-five. Though persons younger than fifty-five had pension rights after five years of service, they could not receive pension benefits until they became sixty-five.

The union wanted, and believed that it had obtained, agreement that employees under fifty-five could receive a lump sum payment equal to that which they would have received if they were sixty-five at the time of pay-out. The defendant disagrees, and asserts that the provision at issue requires a reduction of any lump sum payment to present value.[1]

During the course of negotiations, relatively little attention was given to the provision at issue here. The union, basing its calculations on computations applicable in a preceding year to sixty-five year old retirees eligible under the plan for immediate payment of their pensions, prepared a list of figures. The union showed that list to a management official, and she said that they looked good to her.[2]

---

[1] The plaintiff's brief provides examples of the difference in the pay-outs between the union's interpretation and that of the company for some of the individuals affected by this dispute:

| | | |
|---|---|---|
| Sarka: | per union: $  43,575 | per company: $ 29,193 |
| Schneider | 100,300 | 55,148 |
| Hawk | 56,600 | 40,500 |
| Flores | 79,708 | 49,000 |
| Horstman | 74,797 | 47,769 |
| Andrews | 89,069 | 51,871 |
| Leap | 52,500 | 37,758 |

[2] The company claims that no such list was provided or response given. For purposes of this opinion, I assume that the union's version is correct.

The union did not learn that the company's interpretation of the pertinent provision differed from its interpretation until July, 2001, about nine months after the collective bargaining agreement had been signed. It then brought this suit.

## Discussion

The provision at issue here states in pertinent part:

> Lump Sum Payment. Effective October 2, 2000, in lieu of having his Retirement Benefit payable under Section 5.2.1, or 5.2.2 or 5.2.3, a Member who is vested, but not yet an eligible Member who is laid off by the Company as a result of the relocation of production, may elect to receive said benefit in a single lump sum payment; . . . . The lump sum amount payable under this Section shall be the Actuarial Equivalent of the Member's Retirement Benefit payable in the form of a single life annuity. The lump sum amount shall be calculated at the present value of their normal retirement benefit reduced by factors based on the 1984 Unisex Pension Mortality Table and PBGC interest rates in effect on January 1 of the year of payment.

Doc. 70-3, Ex. B, p. 59.

Under this provision, an employee under the age of fifty-five who has worked more than five years ["a Member who is vested, but not yet eligible" for a pension], can elect to receive his retirement benefit "in a single lump sum payment."

The "amount payable . . . shall be the Actuarial Equivalent of the Member's Retirement Benefit payable in the form of a single life annuity."

That payment "shall be calculated at the present value of their [sic: the] normal retirement benefit reduced by" specified factors.

The union claims that this provision is ambiguous, and does not clearly state whether the amount of the payment is based on the supposition that the recipient is sixty-five [or fifty-five with thirty years of service] or is a lesser amount based on the recipient's actual age. It points out that several terms in the provision – "Actuarial Equivalent of the Member's Retirement Benefit,"

3

"normal retirement benefit," "present value," "1984 Unisex Pension Mortality Table," and "PBGC interest rates in effect on January 1 of the year of payment" – are not defined.

The union also points out that, in its view, there are at least two kinds of "normal" retirement benefits: one payable at age sixty-five [with five or more years of service] and the other at age fifty-five [with thirty years of service]. That being so, the union argues, the effect of this provision and its reference to "normal retirement benefit" is to allow payment of the full retirement benefits to employees under the age of fifty-five, without a reduction to present value.

I do not find the provision to be ambiguous: it means what is says, namely, that the "retirement benefit" otherwise provided for the affected members in the pension plan will be paid to the member, if he desires, in a lump sum. The "retirement benefit" is both the subject of the provision and the basis for computing the amount of the payment.

The value of the "retirement benefit" is fixed by the plan, and not altered by the provision at issue. What is altered is the ability of certain employees, who otherwise would have to wait until their sixty-fifth birthday for such payment, to obtain a lump sum payment ten years or more sooner.

The plan specifically states that the "Normal Retirement Benefits" are what a member receives if he retires on or after reaching his Normal Retirement Age. (Doc. 70, Ex. D at 42, § 4.1). "Normal Retirement Age," in turn, is one's sixty-fifth birthday. (*Id*. at 9, § 1.1.30(a)). There is no indication that the provision at issue, when it used the term, "normal retirement benefit," was doing so with a meaning different from that set forth in the underlying plan – i.e., the benefit received on turning sixty-five.

The provision's reference to the "present value" of the "normal retirement benefit" lends clarity, not ambiguity, to the provision. The term "present value is defined as how much a sum of

money received in the future is worth now." *Shealy v. City of Albany, Ga.*, 137 F. Supp. 2d 1359, 1368 (M.D.Ga. 2001) (citation omitted). Use of that term connotes a reduction in payment as a result of an acceleration in the time of the payment.

The union conflates "early retirement" [i.e., retiring at age fifty-five, with or without one's full pension] and "normal retirement," which occurs at sixty-five. The term early retirement, which the union wants to equate under the provision [though it does not appear in it] with normal retirement, has, in any event, a conventional meaning. An early retirement occurs whenever a person retires before the conventional retirement age of sixty-five. Whether an early retiree enjoys a full or partial pension does not affect his status as an one who has retired early.

The plan incorporates the meaning of early retirement, by defining "Early Retirement Age" as when an employee "has both attained age 55 and fifteen (15) years of Eligibility Service." Such employee can retire at that point, though he will not receive his full pension. Instead, he will receive payments reduced to present value based on the number of years before his sixty-fifth birthday in which he begins receiving those payments. (Doc. 70, Ex. D at 9, 10, 45-46, §§ 1.1.30(b), 1.1.32(b), 4.2). If the employee has thirty years of service at age fifty-five, he still is retiring early, albeit with his full pension.

To the extent that the union believed that its interpretation of the disputed provision was accurate, its interpretation, though in good faith, was not reasonable. In essence, the union was seeking to obtain a benefit for a limited group of employees who had not reached either normal or early retirement age, and who, moreover, did not have the requisite years of service to qualify for an immediate pension benefit. Contrary to the union's contention, the language of the provision, when read, as it must be, in the context of the plan documents, does not support that interpretation.

**Conclusion**

I conclude, therefore, that the provision at issue is not ambiguous, and that it authorized payment of a lump sum based on the retirement benefit otherwise to be paid at age sixty-five, reduced to the present value at the time of its payment of that amount.

In light of the foregoing, it is

ORDERED THAT the defendant's motion for summary judgment be, and the same hereby is granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge